UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| BARBARA A. WOODS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 4:11-cv-28 |
| v. | ) | |
| | ) | *Mattice / Lee* |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Barbara Woods brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI") and disability insurance benefits ("DIB"). Plaintiff has moved for judgment on the pleadings and Defendant has moved for summary judgment [Docs. 14, 20]. Plaintiff alleges the Administrative Law Judge ("ALJ") failed to consider the entire record, failed to give proper weight to the opinion of Plaintiff's treating physician and instead improperly gave controlling weight to the opinions of two state agency physicians, resulting in a residual functional capacity ("RFC") determination not supported by substantial evidence, and erroneously failed to obtain vocational expert ("VE") testimony during the hearing. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 20] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

**I.   ADMINISTRATIVE PROCEEDINGS**

Plaintiff initially filed her applications for SSI and DIB on April 15, 2008, alleging disability as of February 1, 2008 (Transcript ("Tr.") 104-06, 109-10). Plaintiff's claim was denied initially

and upon reconsideration and she requested a hearing before the ALJ (Tr. 50-60, 67-70, 71-72, 78-82). The ALJ held a hearing on October 20, 2009, during which Plaintiff was represented by an attorney (Tr. 25-49). The ALJ issued his decision on November 25, 2009 and determined Plaintiff was not disabled because she could perform her past relevant work (Tr. 8-20). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3). Plaintiff timely filed the instant action on May 14, 2011 [Doc. 2].

## II.     FACTUAL BACKGROUND

### A.     Education and Background

Plaintiff was 46 years old, a younger individual, at the time of the hearing and the ALJ's decision (Tr. 29). Plaintiff had completed the eleventh grade in school (Tr. 29). Plaintiff testified she became disabled as of February 1, 2008 because of her sleep apnea problems and because her legs and knees would give out after standing for too long (Tr. 29-30). At that time, she was working as a cook at a convenience store and had to stay on her feet for the whole shift (Tr. 30-31). She had previously worked as a cashier, then as assistant manager, and eventually manager of a different convenience store and was terminated because she was told she could not keep up with the work anymore, although Plaintiff did not believe she was doing anything differently (Tr. 32-34). Plaintiff testified that being a cashier was easier for her than her last job as a cook (Tr. 34-35).

Plaintiff's main complaint was her sleep apnea, which made her tired because she did not get enough sleep (Tr. 37). She also complained of arthritis in both of her knees that made it difficult for her to stand or walk for any length of time; Plaintiff testified she could only walk for two minutes at a time (Tr. 37-38). Plaintiff used the electric cart when she shopped at stores (Tr. 37-38). Plaintiff testified she also suffered from back pain when she stood on her feet for a long time but had

2

not sought treatment because she had no insurance (Tr. 38). Finally, Plaintiff testified that she suffered from depression and was currently receiving treatment (Tr. 38).

Plaintiff lived with her adult daughter and she and her daughter split the housework, chores and cooking (Tr. 35-36). Plaintiff had a driver's license but no car (Tr. 36).

### B. Medical Records

Medical records from 2003 through 2006 with Dr. Lia Boyanton reflect Plaintiff's diagnoses of hypertension, gastritis, increased lipids, and seizure disorder and frequent medication refills for medication taken for those conditions (Tr. 205-13). On July 20, 2003, Plaintiff saw Dr. Thomas Phelps for a sleep study and was diagnosed with severe obstructive sleep apnea and likely narcolepsy (Tr. 228). Plaintiff had a follow up continuous positive airway pressure ("CPAP") titration study on January 8, 2004 (Tr. 230-32). Plaintiff saw Dr. Phelps again on January 21, 2004 and was fitted with a mask for a CPAP machine (Tr. 229).

Plaintiff had a nerve conduction study on her hands on August 24, 2005 due to paraesthesias, and the study revealed moderately severe to severe delays in her left hand and moderate slowing in her right hand, consistent with carpal tunnel syndrome (Tr. 227). A chest x-ray taken on May 26, 2006 due to Plaintiff's dyspnea was normal (Tr. 223). An x-ray of Plaintiff's left foot taken the same day showed a large heel spur (Tr. 224). Plaintiff had an echocardiogram performed on June 12, 2006 which indicated a left heart enlargement and a pericardial fat pad (Tr. 225).

Plaintiff began following with Partners for Healing in June 2007 for medication refills (Tr. 262-73). Some of these records note that Plaintiff has had no seizure activity (Tr. 265, 267). During an office visit at Partners for Healing on March 11, 2008, Plaintiff reported she was not using her CPAP machine and that her last seizure was two years ago (Tr. 263).

Plaintiff saw Dr. Phelps on March 21, 2008 for a new CPAP mask, but the technician who fitted Plaintiff for the new mask noted she seemed noncompliant, as the machine read only 77.77 hours since her last visit with Dr. Phelps in 2004 (Tr. 281-82, 303). Plaintiff returned to Dr. Phelps on May 1, 2008 for an adjustment on the pressure on her CPAP machine; a diagnosis of restless leg syndrome was noted (Tr. 280). On May 27, 2008, Dr. Michael Ryan completed a physical RFC assessment (Tr. 284-91). Dr. Ryan opined Plaintiff could occasionally lift or carry up to 50 pounds, frequently lift or carry up to 25 pounds, stand and/or walk for about six hours in an eight-hour day, sit for about six hours in an eight-hour day, and was unlimited in her ability to push and/or pull (Tr. 285). Dr. Ryan opined Plaintiff should avoid exposure to hazards because of her seizures and noted her symptoms were partially credible (Tr. 288-89). Also on May 27, 2008, Plaintiff complained of foot swelling during a visit to Partners for Healing but reported she had had no seizures (Tr. 293).

Plaintiff saw Dr. Phelps on June 26, 2008 and reported having no seizures; she gave Dr. Phelps a disability form to fill out (Tr. 314). That same day, Dr. Phelps filled out a treating relationship inquiry form stating Plaintiff suffered from morbid obesity, which contributed to her obstructive sleep apnea, severe arthritis, hypertension, left ventricular enlargement, back pain, and a history of seizures and heart failure (Tr. 297). Dr. Phelps opined Plaintiff could continuously sit for four hours in an eight-hour day but could never stand or walk during an eight-hour day (Tr. 297). Dr. Phelps further opined Plaintiff could occasionally lift and/or carry up to ten pounds but could never lift more than ten pounds; in addition, Plaintiff could never bend, squat, kneel, or crawl and could only occasionally climb stairs, reach above her shoulders, walk on an uneven surface, or use her hands for fine manipulation (Tr. 297-98).

Dr. Phelps also indicated Plaintiff required four hours of bed rest each day, would have

4

problems with alertness and concentration due to medications, and would have problems with stamina and endurance (Tr. 298). Because of Plaintiff's seizures, Dr. Phelps noted she should not be exposed to heights (Tr. 298). Dr. Phelps characterized Plaintiff's back pain as moderate and opined pain would affect her concentration (Tr. 299). Dr. Phelps noted Plaintiff would need to elevate her legs two times either a day or week, but did not further specify the frequency or the length of time elevation would be required (Tr. 299). Dr. Phelps also indicated that Plaintiff's knees would "give way" at times (Tr. 299). Plaintiff could not be reasonably expected to be a reliable employee and would likely miss more than two days of work per month; she would also likely need to lie down and rest more than three times during a workday because she was in poor physical condition (Tr. 297, 299). Finally, Dr. Phelps noted Plaintiff suffered from major depression (Tr. 299). In support of his opinion, Dr. Phelps referenced the sleep study and Plaintiff's history of seizures, but noted he did not have objective evidence of Plaintiff's seizures (Tr. 300).

Plaintiff's husband called Dr. Phelps' office on December 31, 2008 and reported Plaintiff was having problems with the pressure on her machine; she came to see Dr. Phelps on January 13, 2009 for an adjustment and another mask (Tr. 324, 326-28). During that visit, Dr. Phelps noted the mask was covered with a film of dust and it was apparent Plaintiff had not used it in a long time (Tr. 328). The machine was also dusty and Dr. Phelps noted Plaintiff was noncompliant with the CPAP (Tr. 328). On January 20, 2009, a note was made in Plaintiff's file that she was using the CPAP machine nightly (Tr. 329).

Dr. Joe Allison completed a physical RFC assessment on August 25, 2008 and opined Plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, and could stand, walk and/or sit for six hours in an eight-hour day (Tr. 316). Dr. Allison

5

found no limitations in Plaintiff's ability to push and/or pull, but did assess limitations with respect to Plaintiff's ability to handle or finger, noting her history of carpal tunnel syndrome (Tr. 316, 318). Dr. Allison also opined Plaintiff should avoid exposure to hazards due to a history of seizures (Tr. 319). Dr. Allison noted Plaintiff's allegations were partially credible and her obesity would cause fatigue and pain, but she had no other medically determinable impairment which would cause the level of limitation she alleged (Tr. 320). Dr. Allison also noted that the limitations outlined in Dr. Phelps' opinion were not based on the objective evidence in Plaintiff's file, as Dr. Phelps referenced Plaintiff's sleep apnea and history of seizures, and it appeared both were controlled; he also questioned whether it was a significant treating relationship (Tr. 321).

Plaintiff presented as a new patient at the Grundy County Health Department in July 2008 and reported she was actively seeking disability due to her seizure disorder and sleep apnea; pain and arthritis in her right knee was noted and Plaintiff reported her last seizure was one year ago (Tr. 352-54). Plaintiff asked for depression medication on July 18, 2008 and was prescribed Prozac (Tr. 349-50). Records from the Health Department on September 4, 2008 indicate Plaintiff reported a possible seizure the day before (Tr. 344-45). Plaintiff reported no seizure activity during a follow-up visit (Tr. 342-43). Plaintiff reported her right leg had been numb for the past three weeks during a visit on December 17, 2008 and reported a hospitalization for chest pain during a visit on January 5, 2009 (Tr. 336-39). On March 11, 2009 a system review form had seizure circled, but records from this visit note that Plaintiff was seen for medication refills and a sore throat, congestion, and coughing (Tr. 331-33). Records from August 25, 2009 reflect Plaintiff reported she had her last seizure one or two years ago and the Prozac was not helping (Tr. 367).

6

## III. ALJ'S FINDINGS

### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### B. ALJ's Application of the Sequential Evaluation Process

At step one of this process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since February 1, 2008, the alleged onset date (Tr. 13). At step two, the ALJ found Plaintiff had the following severe impairments: obesity, obstructive sleep apnea, and osteoarthritis in her knees bilaterally (Tr. 13). The ALJ noted these impairments were severe because they caused

7

significant limitations on the claimant's ability to perform basic work activities (Tr. 13). The ALJ also discussed Plaintiff's other alleged impairments–hypertension, post carpal tunnel syndrome release, a seizure disorder, back pain, asthma, and mild cardiomegaly–and determined these impairments were not severe because they imposed only a minimal limitation on her ability to work, if any (Tr. 13-14). Also, the ALJ discussed Plaintiff's mental complaints and determined her depression was also not severe because it did not cause more than a minimal limitation on her ability to work (Tr. 14-15). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 15). The ALJ noted that he considered Plaintiff's obesity in combination with her other impairments to determine if any listing was met or equaled (Tr. 15). The ALJ determined Plaintiff had the RFC to perform a full range of light work (Tr. 15). At step four, the ALJ found Plaintiff was able to perform her past relevant work (Tr. 18-19). This finding led to the ALJ's determination that Plaintiff was not under a disability as of February 1, 2008 (Tr. 19).

## IV. ANALYSIS

Plaintiff asserts three arguments to support her contention that the ALJ's decision is not supported by substantial evidence. First, Plaintiff argues that the ALJ improperly gave the opinion of Plaintiff's treating physician little weight and instead gave controlling weight to the opinions of state agency physicians who never examined Plaintiff. Second, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence because he failed to incorporate a necessary limitation with regard to Plaintiff's ability to finger and handle. Third, Plaintiff asserts the ALJ was required to solicit the testimony of a VE before reaching the conclusion that she could

8

return to her past relevant work, because the necessary manipulation limitations would preclude her from returning to past relevant work as a cashier.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no

obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B. Treatment of Dr. Phelps' Opinion

Plaintiff argues that although the ALJ gave reasons for giving Dr. Phelps' opinion less than controlling weight, those reasons are not substantial [Doc. 15 at PageID#: 46]. Plaintiff asserts that her treatment relationship with Dr. Phelps dates back to 2004 and he is, therefore, much more familiar with her medical conditions than a non-treating physician [*id.* at PageID#: 47]. Plaintiff further asserts that Dr. Phelps, as a sleep specialist, is in the best position to opine as to the effects of her sleep apnea, obesity, back pain, and arthritis [*id.*].

The Commissioner argues the ALJ's decision to afford less weight to Dr. Phelps' opinion was reasonable because Dr. Phelps was not as familiar with Plaintiff's non-sleep related conditions due to his speciality, and his opinion was overly restrictive, did not appear to be based upon objective findings (particularly with regard to Plaintiff's seizures), and was based in part on conditions that were adequately controlled by medication [Doc. 21 at PageID#: 68-69].

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic

10

techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting SSR 96-2p). Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Id.* at 544, 547.

The ALJ first addressed the state agency physician opinions and specifically noted he was not giving controlling weight to the opinion of Dr. Ryan "because it was made without benefit of the claimant's oral testimony and without a personal examination of the claimant" (Tr. 18). As for Dr. Allison's opinion, the ALJ afforded it some weight because it was consistent with the record, but noted that it was slightly too broad with respect to Plaintiff's limitations (Tr. 18). The ALJ then acknowledged the treating physician rule and discussed Dr. Phelps' opinion as follows:

11

> I do not find Dr. Phelps' opinion to be well-supported by his own treatment notes and thus entitled to controlling weight in determining the claimant's maximum residual functional capacity. Dr. Phelps' opinion, essentially limiting the claimant to less than sedentary work, dated June 26, 2008, is afforded only some weight because the other substantial evidence is not nearly as restrictive as his assessment of the claimant's limitations. Further, Dr. Phelps is a sleep specialist, and his understanding of the claimant's other impairments differed from the treating sources about the severity of those impairments.

(Tr. 18). The ALJ concluded that Dr. Phelps' opinion would be assigned some weight as it pertained to Plaintiff's sleep apnea and obesity (Tr. 18).

I **FIND** the ALJ gave good reasons to support his decision not to give Dr. Phelps' opinion controlling weight. The ALJ reasonably noted that Dr. Phelps' speciality led him to reach different, more severe conclusions about the effect of Plaintiff's non-sleep related impairments and further noted that Dr. Phelps' overly restrictive opinion was not supported by substantial evidence or his own treatment notes. As the ALJ discussed in his review of Dr. Phelps' treatment notes, Dr. Phelps had noted Plaintiff was noncompliant with her CPAP machine multiple times and had advised Plaintiff to lose weight because her obesity contributing to her sleep apnea problems (Tr. 17). Dr. Phelps also noted on his opinion that his objective source was Plaintiff's sleep study; he had no objective sources for his conclusions as to limitations imposed because of Plaintiff's other impairments, such as her seizure disorder, heart enlargement, back pain, hypertension, arthritis, or depression (Tr. 300). Furthermore, although Plaintiff argues that her treating relationship with Dr. Phelps was a long one such that he is better able to opine as to her conditions, it is worth noting that Plaintiff did not see Dr. Phelps for four years during this treatment relationship. Moreover, it appears Dr. Phelps had seen Plaintiff only six times in four years (and only three times within the recent past) at the time he completed his opinion.

12

I **FIND** that the ALJ reasonably gave Dr. Phelps' opinion only some weight as it pertained to Plaintiff's sleep apnea and obesity, as the objective evidence cited in his opinion focused on Plaintiff's sleep apnea and Dr. Phelps was best able to opine as to Plaintiff's limitations in that area. In contrast, Dr. Phelps was not familiar with Plaintiff's medical records as to her other conditions and was less able to accurately form an opinion about her limitations in those areas. As such, I **CONCLUDE** the ALJ's decision to assign Dr. Phelps' opinion less than controlling weight was supported by substantial evidence and the ALJ gave adequate reasons for this decision.

### C. The ALJ's RFC Determination

Plaintiff next argues that the ALJ's RFC determination was not supported by substantial evidence because he gave the opinion of Dr. Allison substantial weight in finding that Plaintiff could return to her past work as a cashier; in doing so, however, the ALJ failed to incorporate a fingering and handling limitation identified by Dr. Allison [Doc. 15 at PageID#: 47-48]. Plaintiff asserts that work as a cashier involves almost constant fingering and handling and the ALJ did not properly take the limitation imposed by Dr. Allison into account while reaching the conclusion that Plaintiff could work as a cashier [*id.* at PageID#: 49].

The Commissioner argues the ALJ's determination that Plaintiff could perform light work and could return to her prior work as a cashier is supported by substantial evidence because Plaintiff's own descriptions of her cashier jobs were consistent with light work [Doc. 21 at PageID#: 69-70]. The Commissioner asserts that Plaintiff's descriptions were also consistent with Dr. Allison's limitation that Plaintiff only occasionally handle or finger objects, as occasionally means very little to up to one-third of an eight-hour workday, and Plaintiff wrote on her Work History Report that in three of her four previous cashier jobs, she handled, grabbed, grasped, wrote, or typed

13

objects for a total of between one-half to two hours per eight-hour workday [*id.* at PageID#: 70].
As such, the Commissioner argues that even if the ALJ erred in not adopting all of Dr. Allison's
restrictions, the error is harmless because the ALJ's ultimate conclusion is unchanged [*id.*].

Dr. Allison's opinion limited Plaintiff in her ability to handle (gross manipulation) and finger
(fine manipulation); his explanation for the limitation reads "[history] of bilateral [carpal tunnel
syndrome] limits handling fingering to occasional" (Tr. 318). Although the ALJ generally adopted
Dr. Allison's conclusion that Plaintiff could perform light work, he did not give the opinion
controlling weight or substantial weight, as Plaintiff asserts. Instead, the ALJ gave Dr. Allison's
opinion "some weight" because he found it was slightly too broad in assessing Plaintiff's limitations
(Tr. 18).

Therefore, I **FIND** the ALJ did not err by failing to incorporate Dr. Allison's limitation as
to Plaintiff's ability to handle and finger in his RFC determination. As noted in his decision, the
ALJ did not give Dr. Allison's opinion controlling weight, and the limitation Dr. Allison assessed
for Plaintiff's history of carpal tunnel syndrome is not as well supported by evidence in the record
when compared to her other medical conditions. Specifically, Plaintiff had a nerve conduction study
performed in 2005, which showed moderately severe to severe delays in her left hand and
moderately slowing in her right hand, consistent with carpal tunnel syndrome (Tr. 227). It does not

14

appear that Plaintiff ever had a carpal tunnel release in either hand;[1] however, no records indicate Plaintiff complained of problems with her hands after the study was completed. It does not seem to appear as a diagnosis in any other records with Plaintiff's primary physicians and was not included as a diagnosis in Dr. Phelps' opinion. The ALJ reasonably adopted some or most of Dr. Allison's opinion because it was generally consistent with the record, but did not include this limitation, which was not well-established in the record, in his RFC determination. Accordingly, I **CONCLUDE** the ALJ's decision that Plaintiff had the RFC to perform light work without the additional limitation specified by Dr. Allison is supported by substantial evidence in the record.

In addition, even if the ALJ's failure to include this limitation was error, which I do not find, I **CONCLUDE** the error was harmless because Dr. Allison's limitation was not inconsistent with the ALJ's determination that Plaintiff could return to her past relevant work as a cashier; therefore, it would not change the ALJ's ultimate conclusion. As the Commissioner argues, occasional handling and fingering would not limit Plaintiff so severely that she could not perform her past work as a cashier because, as Plaintiff described her past work, handling objects was only an occasional task. In one disability report where Plaintiff listed her past work, her cashier jobs from 1994 through 2008 were lumped together and she indicated she had to handle, grasp or grab big objects for up to seven hours in an eight-hour workday and had to write, type or handle small objects for six hours

---

[1] The ALJ incorrectly characterized Plaintiff's testimony during the hearing as referencing a carpal tunnel release in her left hand (Tr. 16). Plaintiff testified that she was told she needed surgery in her left hand after the nerve conduction study in 2005 but had earlier testified during the hearing that she had never had any surgery for her other conditions because she was uninsured and could not afford it (Tr. 37-38, 46-47). Notably, Plaintiff did not discuss any problems with her hands when questioned by the ALJ; it was only in response to specific questioning by her attorney about the nerve conduction study that Plaintiff testified she could not pick up heavy things, would drop things, and sometimes had no feeling in her hands (Tr. 47).

15

in an either-hour workday (Tr. 133). In her more detailed Work History Report, however, Plaintiff indicated she had to write, type or handle small objects from one-half hour to two to three hours per eight-hour workday in her cashier jobs and had to handle, grasp or grab big objects up to two hours (Tr. 149-152). In some cashier jobs, Plaintiff reported she only handled large objects; in other cashier jobs, Plaintiff reported only handling small objects. Either way, the total time spent handling or grasping any object was only higher when Plaintiff worked as a manager, not just as a cashier (Tr. 151). Therefore, I **FIND** that even though the ALJ was not required to adopt the limitation, Plaintiff described her past relevant work as a cashier in such a way to establish that the position would accommodate a limitation that involved only occasional fingering and handling.

### D. Failure to Solicit VE Testimony

Plaintiff's final argument concerns the ALJ's failure to solicit the testimony of a VE to support his conclusion that Plaintiff could return to her past work as a cashier [Doc. 15 at PageID#: 49]. Plaintiff asserts that the VE could have provided additional information on the vocational effects of Plaintiff's limitations as to the fine and gross manipulation of her hands and her ability to perform the job of cashier [*id.*]. The Commissioner asserts the ALJ has discretion to call a VE to testify during the hearing and, because Plaintiff's descriptions of her past relevant work established that she could perform work as a cashier even with her limitations, a VE was not necessary in this case [Doc. 21 at PageID#: 71].

20 C.F.R. § 404.1560 provides that, in the context of determining whether a claimant can return to past relevant work, "[w]e will first compare our assessment or your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 404.1560(b). Next, the claimant will be asked for information about work they performed in the

16

past, other people may be asked about the claimant's past work, and "[w]e may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' . . . [a] vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work. . . ." 20 C.F.R. § 404.1560(b)(2). If, after taking these steps, the claimant's RFC does not permit a return to past relevant work, the same RFC will be used to determine if the claimant can adjust to other work, and "we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(1)-(2).

In this case, the ALJ noted that he compared Plaintiff's RFC of light work with the physical and mental demands of her past work and found that Plaintiff was at least able to perform work as a cashier, which was classified as light and unskilled (Tr. 19). The ALJ next referenced two vocational analysis worksheets in the record and the Dictionary of Occupational Titles as consistent with this decision (Tr. 19). The vocational analysis worksheets both indicated that Plaintiff had light, unskilled past relevant work as a cashier (Tr. 155, 186).

As noted above, I **FIND** it was not error for the ALJ to exclude the limitation as to Plaintiff's ability to handle and finger from his RFC determination. Plaintiff's primary argument in support of the need for VE testimony is that such testimony was needed to address the impact of these additional limitations on Plaintiff's ability to return to her past relevant work as a cashier. I **FIND** such testimony was unnecessary because the ALJ reasonably did not incorporate this limitation into his RFC determination; therefore, the ALJ was able to reach his conclusion that Plaintiff was able to return to her past relevant work on the substantial evidence in the record, including Plaintiff's

17

own descriptions of her past work, without the need for VE testimony.

Accordingly, I **CONCLUDE** the ALJ did not err in failing to solicit VE testimony and, after considering all of Plaintiff's arguments, I **CONCLUDE** the decision of the ALJ was supported by substantial evidence.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND** that:[2]

(1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**.

(2) The Commissioner's motion for summary judgment [Doc. 20] be **GRANTED**.

(3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).